UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

D. WAYNE DOSS,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        3:05-CV-6
                                        )        (VARLAN/GUYTON)
                                        )
JO ANNE B. BARNHART,                    )
Commissioner                            )
of Social Security,                     )
                                        )
            Defendant.                  )

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule

72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and

recommendation regarding the disposition by the District Court of the plaintiff's motion for

summary judgment [Doc. 12] and the defendant's motion for summary judgment. [Doc. 14].

Plaintiff D. Wayne Doss seeks judicial review of the decision of the Administrative Law Judge

("ALJ"), the final decision of the defendant Commissioner.

The ALJ made the following findings:

> 1.     The claimant met the disability insured
>        status requirements of the Act on February
>        21, 2001, the date the claimant stated he
>        became unable to work, and continues to
>        meet them through the date of this decision.
>
> 2.     The claimant has not engaged in substantial
>        gainful activity since February 21, 2001.

3. The medical evidence establishes that the claimant has severe impairments including degenerative disc disease, a history of asthma, hiatal hernia and gastritis, mitral valve prolapse, and possible fibromyalgia, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's subjective complaints are not credible to the extent alleged.

5. The claimant has the residual functional capacity to perform work-related activities except for the following limitations: lifting a maximum of 20 pounds occasionally and 10 pounds frequently; standing and/or walking about six hours in an eight hour workday; and sitting about six hours in an eight hour workday (20 C.F.R. §§ 404.1545 and 416.945).

6. The claimant is able to perform his past relevant work.

7. The claimant was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

(Tr. 24).

 If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed.  42 U.S.C. § 405(g).  See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004);  Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986).  It is immaterial whether the record may also possess

substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (held that in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet, 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

Plaintiff contends that the ALJ was biased against him. He argues that the ALJ incorrectly assumed that he had not requested reopening of a prior application. (Tr. 19-20). However, the Commissioner points out that the ALJ explained that, in not reopening plaintiff's prior application, he was following the Manual of the Social Security Administration Hearings, Appeals and Litigation Law, which required that he limit his consideration to the period following the period under judicial review. (Tr. 20). Furthermore, the Commissioner notes that at the hearing, the ALJ confirmed with plaintiff that his prior application was at that time pending in federal court, explained that the federal court would rule on whether the prior application period was supported by substantial evidence, and then advised the plaintiff that the proper period for the ALJ's consideration began the day after the prior ALJ's decision. (Tr. 48).

Next, plaintiff contends that the ALJ erred by not questioning the vocational expert ("VE"). (Tr. 65). The Commissioner, however, insists that because this case was decided at Step 4 of the sequential evaluation process, VE testimony was not required. Moreover, the Commissioner

points out that the ALJ offered plaintiff's attorney an opportunity to question the VE, but she declined (Tr. 65-66) and points out that the ALJ had guidance concerning the requirements of plaintiff's past relevant work from the vocational specialists' reports in the record (Tr. 24, 172-73, 208-10), as well as the plaintiff 's own descriptions of his past relevant work. (Tr. 136-42). Thus, the Commissioner insists that there was no bias in the ALJ's decision not to question the VE at the hearing, especially in light of the fact that he offered plaintiff's attorney the opportunity to question the VE.

Next, plaintiff argues that the ALJ showed bias because he "intentionally relied on portions of the record and/or misinterpreted or misrepresented the evidence," challenging the ALJ's statement that there were numerous inconsistencies in the record (Tr. 22-23). Specifically, plaintiff maintains the following as errors: that plaintiff's usual occupation was installing siding, that plaintiff had occasionally performed part-time work (Tr. 22-23), that Dr. Sewell did not diagnose fibromyalgia (Tr. 23), and that the ALJ misread the record by claiming that plaintiff's mental problems did not cover a one-year period. (Tr. 21).

However, the Commissioner insists that the ALJ explained his credibility finding, including the inconsistencies that plaintiff disputes. (Tr. 22-23). Additionally, the Commissioner contends that the ALJ reasonably relied on the record to draw his conclusion that plaintiff occasionally worked as a self-employed individual and that he installed siding when he did work. The Commissioner points out that the ALJ noted that plaintiff reported to the hospital that he was self-employed at the following times: November 1998 (Tr. 221); April and October 1999 (Tr. 223, 227); July, August, September, and December 2000 (Tr. 230, 233, 243, 246); January, May and June

2001 (Tr. 256, 279, 302, 310, 315). Also, plaintiff reported that he fell from the ladder while he was putting siding on a house. (Tr. 61, 224). The Commissioner maintains that since plaintiff had worked in construction and as a handyman in the past (Tr. 136), it was not a far stretch for the ALJ to conclude that he was still doing some type of handyman work on an occasional basis. At the hearing, plaintiff explained that he fell off the ladder when he tried to replace a piece of siding that had fallen from his house and denied working, explaining that the hospital simply recorded that he was self-employed from an earlier time period. (Tr. 61, 65). Therefore, the Commissioner insists that the ALJ did not accept plaintiff's explanation, which is a matter of credibility, not bias.

Plaintiff further asserts the ALJ demonstrated bias by incorrectly stating that Dr. Sewell did not diagnose fibromyalgia. (Tr. 23). However, the Commissioner points out that Dr. Sewell did not list the trigger points or explain why he kept changing his mind about plaintiff's diagnosis: in July 2001, he noted "possible early fibromyalgia" (Tr. 339); in August 2001, he changed his diagnosis to fibromyalgia with no comment (Tr. 338); in October 2001, he changed the diagnosis again and referred to it as "likely fibromyalgia" (Tr. 337); and then, he changed the diagnosis yet again to fibromyalgia. (Tr. 380). The Commissioner points out that the ALJ explained that, although Dr. Sewell listed fibromyalgia, he did not document the extensive testing normally used to establish the diagnosis, and, thus, the diagnosis was not "well supported." (Tr. 23). The Commissioner insists that the ALJ was not biased when he weighed the medical evidence, noting that the ALJ took Dr. Sewell's records into account when he determined plaintiff's functional limitations. (Tr. 21).

Plaintiff further alleges bias by arguing that the ALJ misread the record by claiming that his mental problems did not cover a one-year period. (Tr. 21, 342, 396). However, the Commissioner explained that Dr. Sewell first mentioned depression in March 2001 when plaintiff reported that his father had died. (Tr. 345). Dr. Sewell administered the Zung depression test to the plaintiff, a self-administered twenty-question survey, and plaintiff scored 52, which is two points above "normal," with a score between 50-60 as a sign of possible mild depression. (Tr. 345). Dr. Sewell noted that although plaintiff had "symptoms consistent with depression" his symptoms "may be normal mourning." (Tr. 345). Moreover, the Commissioner notes that plaintiff reported improvement in his mood within three weeks of taking Zoloft prescribed by Dr. Sewell. (Tr. 344). Thus, the Commissioner insists that the ALJ reasonably found that plaintiff, to the extent that he may have had a mental problem, that problem did not result in any significant work-related restrictions. (Tr. 21).

Lastly, plaintiff argues that the ALJ erred by not accepting Dr. Summers' opinion in determining his residual functional capacity ("RFC") (Tr. 284-89), by not accepting the opinions of the vocational specialist, and by finding that he could return to his past relevant work. (Tr. 172). However, the Commissioner contends that the ALJ's RFC finding is very close to the opinion issued by Dr. Summers: the ALJ found plaintiff could lift 20 pounds occasionally and 10 pounds frequently (Tr. 24), whereas Dr. Summers found that the plaintiff would have difficulty lifting more than 20 pounds. (Tr. 287). Furthermore, the Commissioner maintains that the ALJ explained that he relied on the vocational specialist opinions in the record (Tr. 24, 172, 208-09) and points out that

6

it was the vocational specialist who determined that plaintiff could perform his past relevant work as a cashier checker. (Tr. 138, 172).

The burden is on plaintiff through Step 4 of the evaluation process. Boyes v. Secretary of Health and Human Services, 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)). At Step 4, the ALJ compares the plaintiff's RFC to the requirements of his past work and determines whether the past work required him to perform activities in excess of his RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the plaintiff's past work does not require him to perform activities in excess of his RFC, he is not disabled. 20 C.F.R. §§ 404.1560(b), 416.960(b).

I find no merit to plaintiff's claims of bias. First, the ALJ properly advised plaintiff and his attorney at the administrative hearing regarding the relevant time period for this case, and neither objected. (Tr. 47-50). Second, as the Commissioner argues, the ALJ was not required to question the VE because this case was decided at Step 4. Garcia v. Secretary of Health and Human Services, 46 F.3d 552, 559 (6th Cir. 1995). Moreover, plaintiff's attorney was offered an opportunity to question the VE, but declined. (Tr. 65-66). Next, I agree with the Commissioner that the ALJ's findings regarding plaintiff's self-employment, the severity of his mental problems, and his diagnosis of fibromyalgia reflect the ALJ's duty to weigh the evidence and to determine credibility, not bias. Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997) ("an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Lastly, I do not find any error in the weight assigned Dr. Summers' opinion because

it is very close to the RFC finding of the ALJ (Tr. 24), and although the plaintiff complains that the ALJ erred by not accepting the opinions of the vocational specialist (Tr. 172), the Commissioner points out that the ALJ relied on the vocational specialist opinions in the record in finding that plaintiff could perform past work.  (Tr. 24, 138, 172).  20 C.F.R. §§ 404.1546, 416.946; Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 247 (6th Cir. 1987) (ALJ's function is to determine what medical restrictions a plaintiff is under and how such restrictions affect his RFC.).

In light of the foregoing, it is hereby **RECOMMENDED**[1] that the plaintiff's motion for summary judgment [Doc. 12] be **DENIED** and that the Commissioner's motion for summary judgment [Doc. 14] be **GRANTED**.

Respectfully submitted,

s/H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).